THE PEOPLE OF PUERTO RICO, Petitioner, *v.* SUPERIOR COURT OF PUERTO RICO, PONCE PART, JOAQUÍN CORREA SUÁREZ, JUDGE, Respondent.

No. 2095.  Argued February 1, 1955.—Decided March 30, 1955.

*José Trías Monge, Attorney General*, and *Rafael L. Ydrach Yordán, Acting Fiscal of the Supreme Court* for Petitioner. *Santos P. Amadeo* and *Aldo Segurola de Diego* for respondent.

Opinion delivered by MR. JUSTICE PÉREZ PIMENTEL in which
MR. CHIEF JUSTICE SNYDER and MR. JUSTICE MARRERO
concur.

On May 3, 1948, the former District Court of Ponce,
presided over by Judge Joaquín Correa Suárez, sentenced
convict Miguel Ángel Quiñones Torres to serve an indetermi-
nate sentence of 20 to 25 years' imprisonment in the peni-
tentiary for the crime of second-degree murder. On Decem-
ber 16 of that year the convict began to serve that sentence
in the Insular Penitentiary.

On March 11, 1952, that is, more than three years after
commencing to serve his sentence, convict Miguel Ángel
Quiñones Torres filed in the Ponce Section of the former
District Court of Puerto Rico a motion entitled "Recon-
sideration of Judgment." He alleged therein (a) that he
was not properly assisted by counsel in the prosecution, and
(b) that the penalty was excessive.

After hearing the parties on the aforesaid motion for
reconsideration, the lower court, presided over by the same
judge, reconsidered its original judgment and rendered a
new one on April 1, 1954, sentencing the convict to serve
from 10 to 25 years in the penitentiary. At the instance
of The People, we issued a writ of certiorari to review this
action of the lower court.

Petitioner maintains that the respondent court was
without power to reconsider its original judgment after the
accused had begun to serve his sentence. It has been repeat-
edly so held. *Arroyo* v. *People*, 41 P.R.R. 727; *People* v.
*Carbone*, 59 P.R.R. 608; and *Santiago* v. *Warden*, 74 P.R.R.
578. The respondent does not question this doctrine. How-
ever, its contention is that the original sentence of 20 to 25
years' imprisonment in the penitentiary is void (1) because
in fixing that sentence at a minimum greater than the
minimum provided in the Penal Code of Puerto Rico for
second-degree murder, it invaded the jurisdiction of the

Parole Board, the trial judge thereby encroaching upon the powers vested in the Board by § 2 of Act No. 295 of 1946 (Sess. Laws, p. 758); (2) because an indeterminate sentence of 20 to 25 years' imprisonment in the penitentiary becomes a sentence of 15 years, which is in fact and in law a determinate sentence under Act No. 180 of 1943 (Sess. Laws, p. 652), fixing reductions in the sentences of prisoners in the penal institutions of Puerto Rico, all of which is in violation of § 1 of Act No. 295 of 1946, which precludes the courts from fixing specific time limits on sentences; and (3) because an indeterminate sentence of 20 to 25 years' imprisonment in the penitentiary is a violation of the penal policy established in Puerto Rico by Act No. 295 of 1946.

■■ The first ground adduced by respondent in support of the invalidity of the original sentence was expressly overruled by this Court in *Vázquez* v. *Rivera*, 70 P.R.R. 203. Construing § 1 of Act No. 295 of 1946, we rejected in that case the petitioner's contention that § 1 does not vest discretion in the lower court and requires it automatically to sentence the defendants to the maximum and minimum, if any, provided by the Penal Code. We stated, on the contrary, that "the language used by the Legislature enables the trial judge to fix the range of an indeterminate sentence so long as he stays within the minimum, if any, and the maximum fixed by the statutes." We had already thus interpreted the statute in *People* v. *Rodríguez*, 69 P.R.R. 507.

We ratify our interpretation of the statute. Its language is clear. In providing that "when the courts sentence a convict to serve a term for a felony . . . they shall direct the commitment of the convict for a term which shall in no case be less than the minimum term provided by law for the offense committed nor more than the maximum term indicated for said offense . . . " the lawmaker vested those courts with discretion to impose indeterminate sentences

within the maximum and the minimum fixed by law. Act No. 295 prohibits the trial judge from imposing a minimum less than that fixed by law, or a maximum greater than that also fixed by law, but it does not prohibit him from fixing a greater minimum or a lower maximum than that fixed by law. That is the source of the trial judge's discretion in fixing a minimum and a maximum within the limits provided by law. This view is fully supported by the Statement of Motives added to Act No. 295 by Act No. 176 of 1949 (Sess. Laws, p. 552), in which the lawmaker says: "In order to further this end the indeterminate sentence is established in Puerto Rico, which, while permitting the imposition of sentences with a margin of reasonable fluctuation between the lowest possible minimum and the highest possible maximum that may be imposed, shall allow for a distinction to be made among the different offenders during the period of their confinement in jail . . ."

Respondent's contention that an indeterminate sentence of 20 to 25 years in the penitentiary is, in fact and in law, a fixed sentence under Act No. 180 of 1943, is based on a wrong premise. Its reasoning, as we understand it, is this: Act No. 180 of 1943,[1] grants to a prisoner who observes good conduct and assiduity a reduction in the term of his sentence, which shall be computed from his commitment to the penitentiary; that since the reduction is 12 days a month for a sentence of not less than 20 years and less than 30 years, a maximum sentence of 25 years is reduced upon

---

[1] Section 1 of Act No. 180 of 1943 provides as follows:

"Section 1.—From and after April 1, 1907, every prisoner sentenced or who may be hereafter sentenced to imprisonment in the Penitentiary, or to imprisonment at hard labor in the district jails of Puerto Rico, who observes good conduct and assiduity, shall be entitled to the following reductions in the term of his sentence, which shall be computed from his commitment to the jail or penitentiary, provided he is committed after the first day of April, 1907:

". . . . . . .

"(7) For a sentence of not less than twenty years and less than thirty years, 12 days a month."

liquidation to 15 years; that as a matter of fact the sentence imposed by the court was a fixed one which will be extinguished before the convict serves the minimum of 20 years. It then concludes that this is so because the Parole Board does not acquire jurisdiction over the convict until he has served the minimum sentence imposed by the trial court pursuant to § 2 of Act No. 295 of 1946.

The flaw of this argument lies in the fact that the respondent assumes that the convict must serve the minimum term of 20 years without reduction. This is not correct. In computing the reductions of the term of the sentence, at the rate of 12 days for each month, as provided by Act No. 180, the minimum term of 20 years is reduced to 12 years. Upon completion of the 12 years, the Parole Board acquires jurisdiction over the prisoner. Section 2 of Act No. 295 of 1946, construed jointly with § 1 of Act No. 180 of 1943.[2] Since the maximum term of the sentence after computing the corresponding reductions is 15 years, it is obvious that a period of three years intervenes between the two. Therefore, the sentence is not a fixed one as alleged by the respondent.

It is true that in deciding the case of *Vázquez v. Rivera*, *supra*, in which we upheld the validity of an indeterminate sentence of 8 to 10 years' imprisonment in the penitentiary for a crime of voluntary manslaughter, we made no reference to the Statement of Motives of Act No. 176 of 1949.[3]

[2] Any intimation to the contrary made in *Vázquez v. Rivera, supra,* is overruled.

[3] The Statement of Motives added to the Indeterminate Sentences Act by Act No. 176 of 1949, reads thus:

"STATEMENT OF MOTIVES

"In order that the penalty should serve its eminently social function of protecting society from the menace of offenders, it is absolutely necessary that the courts impose such sentences as permit the penal authorities two things: (1) be able to determine in each case where the menace of the offenders resides and (2) have sufficient time to eliminate said menace through a constructive treatment. For

We believe, however, that the penal policy enunciated by the Legislature in the Statement of Motives does not alter our fundamental criterion on the interpretation of the Indeterminate Sentences Act as respects the power of trial judges to impose a minimum in excess of the minimum provided by law, or a maximum less than the one fixed by the statute for the offense committed.

It is significant that when the Statement of Motives was added to the Indeterminate Sentences Act of 1946, no amendment was made to § 1 of this Act, which vests the judges with power to impose indeterminate sentences for terms ranging from the minimum, if any, to the maximum provided by law. However, we invite the attention of the Superior Court to the penal policy defined by our Legislature in Act No. 176 of 1949. It is desirable that that penal policy should find expression of reality in the indeterminate sentences imposed by that court. It is therefore necessary that "there be imposed sentences with a margin of reasonable fluctuation between the lowest ·possible minimum and the highest possible maximum that may be imposed." Otherwise, there may arise in the future the problem of whether or not a sentence providing such a high minimum or such a low

---

this purpose there must exist a direct relation between the duration of the sentence imposed and the problem of the offender.

"In order to further this end the indeterminate sentence is established in Puerto Rico, which, while permitting the imposition of sentences with a margin of reasonable fluctuation between the lowest possible minimum and the highest possible maximum that may be imposed, shall allow for a distinction to be made among the different offenders during the period of their confinement in jail and, as a consequence, these may regain their liberty as they evidence a favorable reaction to the process of their rehabilitation. This way we prevent, in the interest of a better service to the community, that the reformed offender be confined longer than necessary; and likewise, but conversely, that an offender be released while still a menace to the community.

"Society should devote the necessary time to control the conduct of the offender while he is in need of such control in order to reform. This can only be achieved by a sentence permitting the application of the convenient solutions to the cases arising. For this purpose the indeterminate sentence is established."

maximum as to actually convert it into a fixed sentence, for lack of reasonable margin of fluctuation between the two terms, is void as violative of the principle of indetermination. In our opinion, that is not the problem here, and we therefore confine ourselves to deciding that the original judgment rendered by the respondent judge against Miguel Ángel Quiñones Torres is not void.

Consequently, the judgment rendered on reconsideration by the respondent judge on April 1, 1954, will be vacated and the original judgment will remain in full force and effect.

Mr. Justice Belaval concurs in the result.

---

MR. JUSTICE NEGRÓN FERNÁNDEZ with whom MR. JUSTICE SIFRE concurs, dissenting.

The public policy enunciated by the Legislature in Act No. 295 of April 10, 1946 (Sess. Laws, p. 758), as amended by Act No. 176 of May 4, 1949 (Sess. Laws, p. 552), is based on norms sanctioned by modern penology and it is intended to achieve, through the individualization of the penalty by individual treatment methods, the rehabilitation of the delinquent for the purpose of returning him to society in such a condition as to enable him to live harmoniously without manifestations of maladjustment. To accomplish this purpose, it is necessary for the indeterminate sentence to provide a *reasonable* margin of fluctuation between the minimum and the maximum.

The margin of fluctuation between the minimum and the maximum which the lawmaker has left to the discretion of the courts, within the terms prescribed by the penal laws for each offense, must not be so narrow as to actually exclude the intervention of the body to which the lawmaker delegated the administration and execution of that part of the penal rehabilitation, put into effect through the Indeterminate Sentences Act and the Act creating the Parole Board. To

impose such a high minimum as to prevent the Parole Board, pursuant to its own statute, from assuming jurisdiction over the delinquent for the purpose of carrying out the rehabilitation function entrusted to it, truly defeats the purpose of the Act.

Judges have discretion to impose the minimum and the maximum so long as they stay within the minimum and the maximum penalty provided by the penal laws, but such discretion cannot be exercised in violation of the legislative intention. An indeterminate sentence which does not conform to the statutory norms on reasonability of fluctuation between the minimum and the maximum, such as that imposed in the case at bar—20 to 25 years—defeats the legislative intention and is, in my opinion, void or at least voidable, and, notwithstanding the fact that its execution has begun, it may be set aside, as it was by the respondent judge in the instant case, and another rendered instead, conforming to the statutory standards, as was also done by the judge in imposing a new penalty of 10 to 25 years.

In *Vázquez* v. *Rivera*, 70 P.R.R. 203, we stated that "the purpose of the Legislature in providing for indeterminate sentences may be thwarted by trial judges who fix the minimum term at slightly less than the maximum," but that "we cannot rewrite our statute to conform it to a policy which the Legislature has not adopted." I believe that this *dictum* was, within the issue posed in that case, unnecessary and, hence, erroneous. The Legislature clearly expressed its policy in the Statement of Motives contained in the amendment by Act No. 176, approved May 4, 1949, and laid down the rule which will govern the imposition of the penalty, in order that its intention be carried out. I do not believe that an action of the judicial power, in the exercise of its independent but coordinate function as one of the three branches which make up the power of the State, is valid, sound, or proper if it defeats the purpose and public policy

of a valid action of the legislative power performed in the legitimate exercise of the public function, also appertaining to it, in that integration of powers. We cannot conceive of a result which is so manifestly contrary to the altogether evident purpose of the legislation under consideration.

In my dissenting opinion in *Santiago* v. *Warden*, 74 P.R.R. 578, I stated my view on the social function of criminal justice where the individual is convicted and the judge is about to pass sentence. It is well to reproduce here the views stated at pp. 591 and 592:

"In order to carry out fully the sociological function of criminal justice, at its initial stage, as foreshadowed by the advanced studies on modern penology, the judge, upon passing sentence should weigh, in a comprehensive consideration of those factors which are particular to each offender, all those elements of judgment which may aid him in determining the most adequate means for his rehabilitation, whether by suspension of the sentence or by institutional confinement for a minimum term, after which he shall be paroled by the corresponding administrative body, if he experiences, after an adequate treatment, a favorable change which may render it possible. In that sense the mission of a judge is difficult —almost guesswork—in those cases, as here, where he can not rely on probation officers who may guide him in the intelligent exercise of his discretion. A revision of the pertinent statutes in an integrated and coordinated manner, is imperative.

"As La Roe in *Parole with Honor* states, at pages 185 and 186: '. . . The sad truth is that in every case the judge necessarily indulges in guesswork when he imposes a sentence. It is utterly impossible for him to predict how the prisoner will respond to institutional care; or what his health will be; or to what extent his mind will improve; or whether his attitude will become better or worse under supervision. In sentencing prisoners our judges are forced to gamble with human destinies.' And at page 194: 'All the circumstances surrounding the commission of the crime must be given consideration. This our courts have attempted to do, but they have not been able to look into the future and make a valid prediction as to the time when the offender shall have been rehabilitated and made

ready for his return to the community which he has wronged. With the shift in emphasis from a philosophy of punishment to a philosophy of rehabilitation, it is far less important to make the sentence reflect the seriousness of the offense than it is to provide for the restoration of the offender to the community when he is ready to be restored. And that matter cannot be determined at the time when sentence is imposed.' Or, as Cantor states in *Crime and Society*, p. 94: 'In the absence of guiding principles, the personal predilections and idiosyncrasies of the judge influence the nature of the sentence.' See also, Jerome Hall, *Science and Reform in Criminal Law*, 100 U. of Pa. L. Rev. 787; MacCormick, *The Prison's Role in Crime Prevention*, 41 J. Crim. L. & Criminology, 42–43; Barnes and Teeters, *New Horizons in Criminology,* p. 391, *et seq.* and p. 598 *et seq.*"

Having thus expressed my view on the invalidity of the original sentence imposed herein, I am of the opinion that the respondent judge acted correctly in setting it aside and imposing the new one challenged herein.